SUMMIT CONTRACTORS,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 180–85C.

United States Claims Court.

May 1, 1991.

Jonathan M. Hoffman, Portland, Oregon, atty. of record, for plaintiff. Martin, Bischoff, Templeton, Ericsson & Langslet, of counsel.

E. Kathleen Shahan, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, William P. McGinnies, Office of Gen. Counsel, Dept. of Agriculture, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion for summary judgment. Plaintiff, Summit Contractors, Inc. (Summit), challenges the final decision of the contracting officer (CO) that plaintiff was not entitled to a contract extension and that defendant did not interfere and frustrate performance of the contract. Defendant, the United States Forest Service, Department of Agriculture (Forest Service), asserts that the plaintiff defaulted on its contract and claims entitlement to $24,-259.07 in damages from the alleged breach. For the reasons stated below, the court grants defendant's motion for summary judgment.

### Factual Background

This case has been the subject of two prior opinions. In *Summit Contractors, Inc. v. United States*, 15 Cl.Ct. 806 (1988), the court concluded that plaintiff had filed a timely appeal from the CO's final decision under § 10(d) of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.* In a subsequent decision, the court granted summary judgment in favor of defendant on counts two and three of the complaint. *Summit Contractors, Inc. v. United States*, 22 Cl.Ct. 54 (1990). A full statement of facts can be gleaned from a reading of these opinions. Consequently, the facts will be supplemented and elaborated only where appropriate.

On July 16, 1980, the Forest Service awarded Summit the Sawmill Tom Salvage Timber Sale contract, for the purchase and removal of timber from the La Porte Ranger District in the Plumas National Forest. The contract required the removal of all designated timber by March 31, 1981. The Forest Service could extend the contract performance period if plaintiff logged and removed 75 percent of the estimated timber volume (A2) before the termination date.

The bid prospectus for the timber sale contract admonished: "[d]ue to construction activities on the Sawmill Tom Sale road system, delays up to two hours should be expected for log hauling." Plaintiff experienced delays in harvesting activities occasioned by road construction in the timber sale area.[1]

On December 17, 1980, Summit requested a contract extension. Plaintiff acknowledged that only 69 percent of the A2 volume was actually harvested under the contract, but maintained that an additional 260 thousand board feet (MBF) had been cut and decked in preparation for removal.[2] Summit contended that road construction activities in the timber sale area prevented plaintiff from removing enough timber to qualify for a contract extension. Defendant refused to grant plaintiff a contract extension because the 75 percent requirement had not been met. Summit subsequently ceased harvesting activities and the Forest Service declared plaintiff in default of the contract. The Forest Service resold the remaining timber under the contract. On April 7, 1983, defendant assessed $24,259.07 in damages against Summit in accordance with contract clause B9.4, for failure to complete performance by the contract termination date.

By letter of April 14, 1983, plaintiff denied liability and asserted a counterclaim against the Forest Service for not granting a contract extension and for conversion of felled (cut) timber under the contract. The CO denied Summit's claim as untimely on March 2, 1984. Upon reconsideration, the CO affirmed the previous decision on alternative grounds.

---

**1.** The road construction was performed by Crooks Brothers under a separate Forest Service contract. Defendant's motion, p. 3.

**2.** Plaintiff would have qualified for a contract extension had the additional 260 thousand board feet (MBF) of timber been removed from the site.

Summit filed an action in this court on April 5, 1985. Plaintiff's complaint consists of three claims. Count one alleges that the Forest Service "interfered with and frustrated plaintiff's ability to remove [the] timber in that it simultaneously contracted with a third party to perform work on access roads to the sale area." Count two avers that the Forest Service "wrongfully appropriated the timber which plaintiff cut and sold said timber to a third party." In the third claim for relief, plaintiff argues in the alternative that the "contracting officer's damages assessment was erroneous." Defendant filed an answer to plaintiff's complaint on October 6, 1989, asserting a counterclaim for damages incurred due to Summit's failure to complete the contract. Defendant also filed a motion to notify third party surety, American Motorist Insurance Company, of the pending action. To date, American Motorist Insurance Company has not responded to this notice. On November 28, 1989, plaintiff filed an answer to the counterclaim. Plaintiff denied liability on the counterclaim, maintaining that defendant impeded the removal of timber from the sales area and that Summit would have met the 75 percent requirement set forth in Clause C8.231 had it not been for government interference.

Defendant filed a "Motion to Dismiss Plaintiff's Second and Third Claims, or in the Alternative, Motion for Partial Summary Judgment" on April 5, 1990. Despite a time extension, plaintiff failed to respond to defendant's motion. By Opinion of November 16, 1990, this court granted partial summary judgment for defendant on count two of the complaint and dismissed count three of the complaint for lack of jurisdiction. *Summit Contractors, Inc.*, 22 Cl.Ct. at 58–59.

On March 27, 1991, defendant filed a motion for summary judgment on count one of the complaint and its counterclaim against plaintiff. In the motion, defendant maintains that the Forest Service did not breach its implied duty to cooperate with plaintiff in permitting another contractor to perform road construction in the timber

sale area during the "normal operating season" set forth in the contract. Defendant also maintains entitlement to judgment as a matter of law on its counterclaim since plaintiff defaulted on the contract. Plaintiff has not responded to this motion.

### Discussion

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law, the moving party is entitled to judgment. RUSCC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the nonmovant's case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

Pursuant to RUSCC 56(f), summary judgment may be entered against the opposing party if that party has not responded and summary judgment is appropriate. Since plaintiff has not responded to defendant's motion, the facts alleged by defendant are deemed admitted. To grant summary judgment in the present case, the court must determine, as a matter of law, whether plaintiff was entitled to a contract extension. The court is presented with questions of contract interpretation. The court may rule on those interpretations as a matter of law. *National Rural Util. Coop. Fin. Corp. v. United States*, 14 Cl. Ct. 130, 136 (1988) *aff'd*, 867 F.2d 1393 (Fed.Cir.1989).

### A. Implied Duty of Cooperation

■ Plaintiff avers in count one of the complaint that the Forest Service breached its implied duty of cooperation by contracting with another contractor to perform work on the access roads to the sale area.

■ The government has an implied duty to cooperate and not to hinder the performance of a contract. *George A. Fuller Co. v. United States*, 108 Ct.Cl. 70, 94, 69 F.Supp. 409 (1947). The government breaches this implied duty of cooperation in denying a contractor access to the worksite for an unreasonable period of time. *Blinderman Constr. Co. v. United States*, 695 F.2d 552 (Fed.Cir.1982). A breach of an express contractual warranty is tantamount to breach of the duty to cooperate. *Cedar Lumber, Inc. v. United States*, 5 Cl.Ct. 539, 549 (1984) *citing United States v. Foley*, 329 U.S. 64, 67, 67 S.Ct. 154, 155, 91 L.Ed. 44 (1946) and *Commerce International Co. v. United States*, 167 Ct.Cl. 529, 535, 338 F.2d 81, 85 (1964). Absent a specific warranty, the worksite must be unavailable through the fault of the government to establish a government breach. *Ben C. Gerwick, Inc. v. United States*, 152 Ct.Cl. 69, 285 F.2d 432 (1961). Plaintiff bears the burden of demonstrating government fault. *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786 (1978).

In the present case, the Forest Service created no warranty of site availability under the contract. The contract does specify a "normal operating season" for logging operations. However, the contract contains no language guaranteeing Summit unrestricted access to the timber sale area. More importantly, the Forest Service advised bidders to expect delays in removal of timber from the sale area. The bid prospectus contained the following language: "[d]ue to construction activities on the Sawmill Tom Sale road system, delays up to two hours should be expected for log hauling." These are not words of warranty, but an attempt to disclaim site availability. The Forest Service, therefore, made no express representations or assurances that Summit would have complete access to all roads in the timber sale area.

Furthermore, Summit does not contend that it was prevented from removing timber from the sale area altogether. Rather, Summit alleges that the Forest Service hampered its ability to remove timber. Yet, Summit provides no evidence of the impact of the road construction on removal operations. Hence, the court cannot ascertain whether the delay was unreasonable. Even if Summit experienced material delays in timber removal, the court notes that the Forest Service made a reasonable effort to mitigate potential difficulties in contract performance. The government put Summit on notice prior to award that there would be delays in logging operations. Having been informed of anticipated delays, plaintiff was in a better position to overcome performance difficulties and complete the work in a timely manner. Since the delays were foreseen and expected by plaintiff, it is apparent that Summit, not the Forest Service, assumed the risk of performance delays. *Burns & Roe, Inc.*, EBCA No. 102–11–79, 81–2 BCA ¶ 15,386 (1981). In short, the court finds that the government acted diligently, albeit unsuccessfully, in attempting to avoid delays but did not accept responsibility for these delays. Accordingly, the court concludes that the Forest Service did not breach its implied duty of cooperation and cannot be held liable for delays experienced by Summit due to road construction in the timber sale area. *Coastal States Petroleum Co.*, ASBCA No. 31059, 88–1 BCA ¶ 20,468 (1988). *See also J.W Bateson Co.*, GSBCA No. 3441, 73–2 BCA ¶ 10,098 (1973); *Arvid E. Benson*, ASBCA No. 11116, 67–2 BCA ¶ 6659 (1967).

### B. Defendant's Counterclaim

■ Plaintiff failed to cut and remove the required timber prior to the contract expiration date. In addition, plaintiff did not remove enough timber to qualify for a contract extension under Clause C8.231 of the contract. Furthermore, defendant did not commit a breach of contract by contracting with a third party to perform work on roads accessing the sale area. Consequently, plaintiff was not entitled to a con-

tract extension and was properly held in default of the contract.[3]

Under the terms of the contract, defendant is entitled to damages equal to the difference between the original contract price (plus cost of resale) and the resale price in the event of a breach by plaintiff. Following Summit's default, the Forest Service resold the remaining timber volume, including the timber felled and decked by Summit. The Forest Service incurred $24,259.07 in damages due to plaintiff's breach. Accordingly, the court concludes that defendant is entitled to recover on its counterclaim for this amount.

### Conclusion

For the foregoing reasons, the court grants defendant's motion for summary judgment on the remaining count of plaintiff's complaint and defendant's counterclaim. Defendant is entitled to $24,259.07 in damages, plus interest, to be calculated at the rate specified by the Secretary of the Treasury in accordance with 31 U.S.C. § 3717(a)(1). The Clerk is directed to dismiss the complaint and enter judgment on defendant's counterclaim. No costs.

---

3. Plaintiff posits four affirmative defenses to the counterclaim, three of which have been rejected previously by the court. Plaintiff additionally asserts that the road construction rendered performance impossible. However, plaintiff has not shown that it was physically impossible to conduct logging operations or that timber could only be removed at an excessive, unreasonable, or uncontemplated expense. *Jennie–O Foods, Inc. v. United States,* 217 Ct.Cl. 314, 328, 580 F.2d 400 (1978). Plaintiff has, therefore, failed to prove that performance was impossible or commercially impracticable.