# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- )<br>)<br>North Arizona Construction Company )<br>)<br>Under Contract No. W5K9UR-12-P-7021 ) | ASBCA No. 61028 |

APPEARANCE FOR THE APPELLANT:      Mr. Mohammad Hussein Zamani
                                          President

APPEARANCES FOR THE GOVERNMENT:      Raymond M. Saunders, Esq.
                                          Army Chief Trial Attorney
                                          MAJ Bruce L. Mayeaux, JA
                                          Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE YOUNGER ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The government moves to dismiss this appeal, contending that appellant, North Arizona Construction Company (appellant or North Arizona) did not timely appeal to the Board from a contracting officer's final decision pursuant to the 90-day limitations period in the Contract Disputes Act, 41 U.S.C. § 7104 (CDA). Appellant opposes the motion. We grant the motion and dismiss the appeal for lack of jurisdiction.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

1. On 21 May 2012, appellant and the Department of the Army (Army or government) bilaterally executed a purchase order, No. W5K9UR-12-P-7021 (contract), for the construction of upgrades to a police station in Afghanistan for a total value of 1,295,306.06 Afghani or $26,640 (R4, tab 1 at 1-2). The contract incorporated the standard Federal Acquisition Regulation (FAR) clause 52.233-1, DISPUTES (JUN 2008) (R4, tab 1 at 20).

2. During performance, appellant allegedly encountered problems in obtaining access to the construction site (*see generally* R4, tab 3). On 27 October 2012, appellant emailed a "Memo for Record," an invoice, and other documents to the contracting officer, Mr. Isaac Thorp (CO Thorp) (Bd. corr. file, app. 29 January 2017 notice of appeal, attach. file name "Gmail - Invoice PB Landay Upgrades - W5K9UR-12-P-7021.pdf"). The "Memo for Record" was characterized by appellant as its claim seeking payment for 70% of the costs related to materials allegedly stolen because an Army commander would not allow appellant to store the materials at the construction site, and as a result, the items were left unsecured outside the site. Appellant stated that the previous contracting officer

advised it to submit a claim for the stolen materials after work was completed. (R4, tab 5) The Board is unable to locate copies of the invoice and other documents that were a part of the 27 October submission in the record.

3. In an email dated 28 October 2012, CO Thorp notified appellant that quality issues with the construction work would need to be corrected prior to acceptance by the government. Additionally, CO Thorp informed appellant that the government was not responsible for appellant's loss and would not pay appellant's invoice for the allegedly stolen materials. CO Thorp advised appellant that once corrective actions were completed it could submit an invoice for the contract amount. (Bd. corr. file, app. 29 January 2017 notice of appeal, attach. file name "Gmail - Invoice PB Landay Upgrades - W5K9UR-12-P-7021.pdf") The email on its face is not styled as a final decision.

4. Between October and November 2012, the parties continued to exchange email correspondence regarding responsibility for the costs of the allegedly stolen materials (*see generally* R4, tab 7; Bd. corr. file, app. 29 January 2017 notice of appeal, attach. file name "Gmail - Invoice PB Landay Upgrades - W5K9UR-12-P-7021.pdf"). After receiving confirmation from government personnel that corrective work was completed, CO Thorp, in an email dated 14 November 2012, directed appellant to submit its invoice for the contract amount (R4, tab 7).

5. After continued insistence by appellant that it was entitled to payment for costs associated with the allegedly stolen materials, CO Thorp, in an email dated 27 November 2012, advised appellant to submit two invoices, one pertaining to the contract amount and the other pertaining to appellant's request for the costs of the lost materials which would be treated as its claim under the contract. CO Thorp also advised appellant to provide supporting documentation with its claim. (R4, tab 7)

6. On the same date, appellant submitted its claim package via email as directed by CO Thorp. The package included the earlier submitted 27 October 2012 "Memo for Record" (*see* statement 2) and an invoice in the amount of 1,071,444 Afghani.* (Bd. corr. file, app. email dtd. 3 February 2017 email with attachs.) By email dated 28 November 2012, the government acknowledged receipt of the claim, and further informed appellant that a new contacting officer, MSgt Nicholas B. Bastiani (CO Bastiani), would evaluate and issue a final decision on the claim (R4, tab 9).

7. The record includes a final decision dated 26 February 2013 and digitally signed on 1 March 2013 by CO Bastiani. The decision denied appellant's claim due to

---

* We find that this amount, using the exchange rate at all relevant dates, was less than $100,000, and therefore, no certification pursuant to the CDA was required.

2

lack of support. With respect to appeal rights, the decision included the following language in relevant part:

> This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

(R4, tab 13)

8. On 1 March 2013, CO Bastiani emailed appellant a release of claims form for appellant's execution (R4, tab 15). CO Bastiani and appellant subsequently exchanged a series of emails as follows, in pertinent part:

(a) [Appellant via email on 2 March 2013]:

> You should pay the money of stolen material. We should talk face to face, to find the solution.

(b) [CO Bastiani via email on 3 March 2013]:

> It is not necessary for us to speak face to face regarding this matter. We have requested supporting documentation for this claim multiple times which [appellant] was unable to provide. I have issued the Contracting Officer's Final Decision on this claim which was sent to [appellant] on 1 March 2013.
>
> Please sign and return the release of claims.

(c) [Appellant via email on 3 March 2013]:

> I had provide [sic] the necessary documents before, but no one pay attention on them, for third time I suggest to talk face to face.

(d) [CO Bastiani via email on 3 March 2013]:

3

> When did you provide the documentation supporting the
> claim? I do not want an invoice, pictures or a list of
> materials. I want to see paid receipts showing that you
> purchased and paid for the materials for this job one time and
> then when they were allegedly stolen, you went out and
> purchased and paid for the exact same materials again.
>
> There is absolutely no reason for us to talk face to face.
> Speaking to eachother [sic] will not settle this matter. Unless
> you can email me the paid invoices showing that you paid for
> the same materials twice, there will be no further discussion
> regarding this claim.

(R4, tab 14)

9. By email dated 29 April 2013, a contracting specialist requested appellant to execute an attached release of claims. By email dated 1 May 2013, appellant refused to sign the release until the government paid it for the lost materials, stating, in part, that "I submitted my stolen materials invoice to Mr. Isaac Thorp, they did not pay me. [T]hey sent out document, which is not reasonable." (R4, tab 17)

10. By email dated 29 January 2017, appellant filed a notice of appeal to the Board, seeking payment for the lost materials under the contract. The notice did not refer to or attach the 26 February 2013 final decision.

11. On 1 February 2017, the Board directed appellant to submit a copy of the claim submitted to the contracting officer that was the subject of the appeal (Bd. corr., order dtd. 1 February 2017). In emails dated 3 February 2017, appellant transmitted several documents to the Board which included copies of the 27 November 2012 claim package and the 26 February 2013 final decision.

12. The record includes a 14 February 2017 declaration from CO Bastiani pursuant to 28 U.S.C. § 1746 (R4, tab 19). CO Bastiani states, in relevant part, that:

> It was on 01 March 2013 that I digitally signed the
> [final decision] and sent it to [appellant] via email (I generally
> make it a practice to send documents the same day they are
> signed for posterity sake), return receipt requested, as was my
> customary means of providing documentation for which
> evidence of receipt was necessary in the deployed
> environment. While the record does not contain a copy of the
> email by which I provided the [decision] to [appellant], in
> later email correspondence I did refer [appellant] to the

4

decision provided to them on 01 March 2013; a point that [appellant] does not refute.

(*Id.* at 3)

## DECISION

The government contends that appellant failed to timely appeal from the contracting officer's 26 February 2013 final decision (*see* statement 7) within the 90-day statutory period, depriving the Board of jurisdiction over this appeal. To support its contention, the government asserts that appellant received the final decision on 1 March 2013, offering CO Bastiani's declaration, email correspondence between the parties after the decision was issued, and appellant's electronic transmission of a copy of the decision to government counsel and the Board on 3 February 2017 as evidence of receipt. (Gov't mot. at 5)

In opposing the motion, appellant largely advances arguments related to the merits of the dispute. Appellant contends that it neither had knowledge, nor did CO Bastiani adequately inform it, regarding appealing to the Board. (Bd. corr. file, app. email dtd. 13 March 2017). Appellant further elaborated that "[a]fter 4 years. I found the website of ASBCA and submitting my claims! When I found, I did submit my claim. The [Army] did not completely inform me. So I did not understand about law and process of ASBCA. I am so sorry about late of it. But please review all documents. Which show my claim is absolutely correct!" (Bd. corr. file, app. email dtd. 3 April 2017 sent to government paralegal and copied to the Board in response to gov't reply)

After careful consideration of the record, we conclude that the government's motion must be granted and the appeal dismissed for lack of jurisdiction. We reach the conclusion for two principal reasons.

First, the appeal was filed long after the time specified by law. Under the CDA, a contracting officer's final decision "is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced." 41 U.S.C. § 7103(g). To initiate an appeal from a final decision to an agency board, a contractor must do so within 90 days from the contractor's receipt date of the decision. 41 U.S.C. § 7104. This 90-day appeal period is statutory and may not be waived or extended. *See Cosmic Construction Co. v. United States*, 697 F.3d 1389, 1390 (Fed. Cir. 1982). Therefore, a timely appeal is a jurisdictional prerequisite for the Board to entertain an appeal. *Mansoor International Development Services*, ASBCA No. 58423, 14-1 BCA ¶ 35,742 at 174,926-27.

The CDA requires a contracting officer to "mail or otherwise furnish a copy of the decision to the contractor." 41 U.S.C. § 7103(d). FAR 33.211 further provides that the contracting officer is to furnish a copy "by certified mail, return receipt requested, or by any other method that provides evidence of receipt." While appellant bears the burden of

proof to establish that its appeal to the Board was timely filed, the government bears the burden of establishing the receipt date of the final decision by the contractor. *Singleton Enterprises*, ASBCA No. 58235, 14-1 BCA ¶ 35,554 at 174,227. To meet this burden, the government must provide "objective indicia" of actual physical receipt. *Riley & Ephriam Construction Co. v. United States*, 408 F.3d 1369, 1372 (Fed. Cir. 2005).

CO Bastiani attested that he sent the final decision via email on 1 March 2013, and correspondence in the record shows that he later informed appellant that a decision was sent on that date (statement 8). While this alone may be insufficient to prove receipt, appellant's statements in response to the government's motion lead us to conclude that it did in fact receive the final decision on 1 March 2013. Appellant does not assert that it received the decision on a different date. Rather, its contentions center on the adequacy of the government's notice and its unfamiliarity with the Board and the contract dispute process. Appellant appears to concede that its appeal is untimely, stating that "[a]fter 4 years. I found the website of ASBCA and submitting my claims! When I found, I did submit my claim. The [Army] did not completely inform me. So I did not understand about law and process of ASBCA. I am so sorry about late of it." (Bd. corr. file, app. email dtd. 3 April 2017 sent to government paralegal and copied to the Board in response to gov't reply) Moreover, appellant refused to execute a release of claims under the contract because the government did not pay its invoice for the stolen materials and "sent out document, which is not reasonable" (statement 9). We can reasonably infer that this document referred to by appellant is the 26 February 2013 final decision. Under the circumstances, we are convinced that the government has proven receipt, and the running of the CDA's 90-day limitations period commenced from the receipt date of 1 March 2013. We are not dissuaded from this conclusion by appellant's short email discussion, with CO Bastiani after his final decision. Although the Federal Circuit held, in *Guardian Angels Medical Service Dogs, Inc. v. United States*, 809 F.3d 1244 (Fed. Cir. 2016), that a contracting officer's indication that he was still willing to reconsider his final decision could lead a contractor to believe the statute of limitations, was being tolled, *see Guardian Angels*, 809 F.3d at 1249-51, we are not presented with such circumstances here. CO Bastiani never gave appellant any reason to hope that his decision was in any way not final – especially not after his 3 March 2013 email (*see* statement 8(b)) and the 29 April 2013 email from the government (*see* statement 9) seeking a release of appellant's claims.

Second, the advice of rights in the decision was adequate. It is clear that this appeal was filed substantially more than 90 days after appellant's receipt of the contracting officer's decision. However, a decision that does not adequately inform the contractor of its appeal rights may prevent the running of the statutory 90-day period provided that actual prejudice or detrimental reliance is shown by the contractor. *See Decker & Co. v. West*, 76 F.3d 1573, 1579 (Fed. Cir. 1996) (proof of harm caused by defect); *Mansoor International*, 14-1 BCA ¶ 35,742 at 174,926 (proof of actual prejudice or detrimental reliance caused by omission of detailed appeal rights). The CDA requires the final

6

decision to include language that informs "the contractor of its rights as provided in this chapter." 41 U.S.C. § 7103(e). The implementing regulation, FAR 33.211(a)(4)(v), provides that the final decision shall include substantially the following language, in relevant part:

> This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

Here, the final decision quoted verbatim the language from FAR 33.211(a)(4)(v) above (statement 7). The notification was neither incomplete nor misleading. Acceptance of appellant's contentions that the government did not inform it regarding the Board would enlarge the government's obligation beyond what is required by the statute and regulation. As stated previously, we lack authority to waive or extend the 90-day statutory period. Because the final decision adequately apprised appellant of its appeal rights and this appeal was filed more than 90 days from receipt of the decision, we lack jurisdiction to hear this untimely appeal.

## CONCLUSION

The government's motion is granted and the appeal is dismissed for lack of jurisdiction.

Dated: 11 December 2017

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

7

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61028, Appeal of North Arizona Construction Company, rendered in conformance with the Board's Charter.

Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals